# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF MISSISSIPPI

## GREENVILLE DIVISION

|  |  |  |
|---|---|---|
| Julie Whitfield Herod | ) | Case No. <u>4:15-cv-00164-DMB-JMV</u> |
|  | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) | **CLASS ACTION COMPLAINT** |
|  | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| DRAFTKINGS, INC., | ) |  |
| 225 Franklin Street, 26th Floor | ) |  |
| Boston, Massachusetts 02110 | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| Defendant | ) |  |

## FIRST AMENDED CLASS ACTION COMPLAINT
## JURY TRIAL DEMANDED

Plaintiff, Julie Whitfield Herod ("Plaintiff"), wife of Dan Herod, individually, and on behalf of all other similarly situated, by and through counsel, brings this action against DraftKings, Inc. ("DraftKings"), (collectively "Defendant"), and states as follows:

## NATURE OF THE CASE

1.      This is a class action complaint against DraftKings Inc., operating a Daily Fantasy

Sports ("DFS") sports gaming website which violates Mississippi law.

2.      Plaintiff brings this action on her own behalf and on the behalf of all persons who,

like Plaintiff, have sustained ascertainable losses arising out of DraftKings Inc.,

systematic and continued violation of the Mississippi Statutory civil and various

criminal laws.

3.      DraftKings is operating an illegal online sports betting business within the State

of Mississippi.

4.      In a specious attempt to circumvent Mississippi law, DraftKings Inc., defines its

sports betting scheme as a game of skill regarding Mississippi exp. prohibits the

betting of money on any game not approved and/or licensed agreements/contracts

there under one to be utterly void, see Mississippi Code δ, 87-1-1. et seq.

5.      DraftKings Inc., sports betting contests are based upon the performance of a team

and individuals that participate in NCAA college football, NCAA college basketball,

the NFL, NBA, MLB, and the NHL. These contests, which are games wagered on

and are illegal under Mississippi law.

6.      DraftKings accepts wagers from persons in Mississippi for various sporting

events using a scheme they created that assigns values (points) based upon the

performance of athletes and teams engaged in amateur and professional athletic

competitions.

7.      After the sporting events are concluded, DraftKings calculates a score using the

scheme they created that awards points based upon the various individual college and

professional athletes' performance and pays bettors that have the highest total number of points.

8.      Bettors select an entry fee, which is up to five thousand ($5,000) dollars, and the number of the games or teams they wish to play. If their roster generates more points than their rivals on that day or week, they win all the money in the pot, DraftKing's average 6.5% cut.

9.      Recently, lawmakers have scrutinized FanDuel's and DraftKing's business model and operations, alleging substantial similarities between FanDuel and DraftKings and online poker, and other gambling websites.

10.     DraftKings claim, in error, that their bookmaking operations were made legal by the Unlawful Internet Gambling Enforcement Act of 2006 ("UIGEA"). Said act does not preempt Mississippi's various gambling laws. Mississippi's anti-gambling laws are remedial and are interpreted as such. In addition, no other Federal Statutes preempt state law.

11.     Mississippi has a very broad definition of illegal gaming and its laws are violated by the operations of the Defendant's gaming operation.

12.     The Federal internet gaming statute is codified as 31 U.S.C. 5361 et seq, it expressly provides that it shall not be construed as altering, limiting, or extending any state law that prohibits, permits, or regulates gaming within the United States.

13.     On October 15, 2015, the Nevada Gaming Control Board ("NGCB") ordered DraftKings to cease its operations in the State of Nevada, because their operations constitute gambling and they required a gambling license to continue operations in

that state. Thus at least one regulatory body has found the site operated by DraftKings to be illegal. Mississippi has no statute which authorized the Defendants conduct.

14.     DraftKing's operations are a violation of Mississippi's criminal and civil statutory provisions. In particular the defendant's actions render all of its Terms of Use and/or contracts, utterly void pursuant to Miss. Code δ 87-1-7. The defendants violate Miss. Code δ 97-31-1.

15.     DraftKings defines its sports betting schemes as Daily Fantasy Sports ("DFS") in violation of a Mississippi law, which expressly prohibits profiting at any sport, amusement and pastime, see Miss. Code δ 87-1-1, 87-1-3 and 87-1-5.

16.     Gambling in Mississippi is made a criminal offense under Mississippi Code δ 97-33-1 et seq. the defendants operations violate said law on a knowing, and willful and continuing basis.

17.     It is the public policy of Mississippi to prohibit unauthorized and/or illegal gaming and/or gambling. Any content providing therefore is utterly void. All anit gaming statutes in Mississippi are remedial.

18.     The Defendant is not authorized by the Mississippi Gaming Commissions to conduct its games and Defendant has no gaming license.

19.     Plaintiff herein, individually and on behalf of others similarly situated and the putative class, can seek to recover damages from DraftKings in the form of restitution of lost wagers together with punitive damages, cost and fees. In addition, these damages are provided and sought pursuant to Miss. Code δ 97-43-5 and 97-43-8.

20.     Mississippi Code δ 87-1-5 provides for the losses to recover lost wagers. The

Plaintiff herein seeks to recover losses on behalf of herself and all others similarly

situated within the State of Mississippi.

21.     That the gambling laws of Mississippi are remedial and not punitive pursuant to

Miss. Code δ 97-33-29. As such, all related statutory construction is to be liberally

constructed in order to effectuate the remedial intent of the laws of the State of

Mississippi.

22.     The actions of the Defendant are willful, deliberate, and violate express

Mississippi Statutes forbidding their conduct. As such, an award of punitive damages

and attorney fees is sought and is appropriate under civil and criminal statutory law in

Mississippi.

23.     Plaintiff and the putative class are entitled, as a matter of law, to recover the

money they lost, and in addition, are entitled to any and all fees that inured to

FanDuel and DraftKings on account of the contracts being not just void but utterly

void under Mississippi law.

## PARTIES, JURISDICTION AND VENUE

24.     Plaintiff, Julie Whitfield Herod, is an adult resident of Montgomery County,

Mississippi.  She is the wife of Dan Herod, who gambled on the Draftkings' website

and lost money.  She brings this action on behalf of herself individually, and on

behalf of a class of person similarly situated as described in the class definition

below.

25.     Defendant DraftKings, Inc., (sometime herein DraftKings) is a Delaware

corporation with its principal place of business in Boston, Massachusetts.

26.     Defendant DraftKings is authorized to conduct business and do conduct business throughout the State of Mississippi.

27.     This Honorable Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1331, which confers upon the Court original jurisdiction over all civil actions arising under the laws of the United States. This Honorable Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. 1332 (D), because the proposed class consists of 100 or more members; the amount in controversy exceeds five million ($5,000,000.00) dollars, exclusive costs and interest and minimal diversity exists. Furthermore, the Plaintiff alleges that is Court has jurisdiction under 28 U.S. Code § 1332, in that there complete diversity of citizenship and the amount in controversy is greater than $75,000.  This Honorable Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. 1367.

**28.**     Venue is proper in this district under 28 U.S.C. 1391 because of the substantial part of events or omissions giving rise to Plaintiff's claims occurred in this district. Mississippi is the proper venue and the cause of action took place here.

## **FACTUAL BACKGROUND**

29.     Plaintiff readopts and realleged all facts and allegations herein.

30.     Defendants are operating an illegal online sports betting business within the State of Mississippi.

31.     Defendants accept wagers from bettors for various sporting events using scheme they created that assigns values (points) based upon the performance of athletes engaged in amateur and professions athletic competitions.

32.     After the sporting events are concluded, Defendants calculate a score using the system they created that awards points based upon the various individual college and professional athletes performance. Defendants then pay the bettors who have the highest total number of points.

33.     Plaintiff, Julie Whitfield Herod, wife of Dan Herod, who is an individual who has utilized DraftKings' website. He has incurred monetary losses as a result of said use. Thus, Defendant, DraftKings, is indebted to the Plaintiff, Julie Whitfield, for the money so lost and paid, or wagered according to MS Code Ann. § 87-1-5 which states:

*Loser may sue and recover money or property lost; exceptions*

*If any person, by playing at any game whatever, or by betting on the sides or hands of such as do play at any game, or by betting on any horse race or cockfight, or at any other sport or pastime, or by any wager whatever, shall lose any money, property, or other valuable thing, real or personal, and shall pay or deliver the same or any part thereof, the person so losing and paying or delivering the same, **or his wife or children, may sue for and recover such money, property, or other valuable thing so lost and paid or delivered**, or any part thereof, from the person knowingly receiving the same, with costs.*

34.     Defendants are able to operate their websites because they market and represent DFS as a game of skill, like chess or the stock market. It is also similar to pari-mutuel horse race wagering that players compete against each other for prize pools and Defendants take their fee from the prize pool itself. The Defendants game, regardless of how categorized, is illegal under the laws of the State of Mississippi, not only are the games illegal, but they are dependent on the play of athletes over whom the bettor has no control. It is simply a matter of luck and chance as to how a separate athlete plays in a given day. Just like a horse race.

7

35.     Alternatively and Commutatively, Plaintiff alleges that gaming on DraftKing's platform requires very little or no skill and that the outcome therefore "is determined largely by chance." The gaming promoted and played by and through DraftKing's is simply unlawful.

36.     Factually, Defendant's sports wagering scheme involves selecting a set number of athletes that will play in a single sporting event.

37.     Defendants establish a point system that correlates with the athletes' performance during a single athletic event.

38.     Defendants determine which athletes its bettors can select and assigns a handicap (spread) based upon the athlete's perceived potential to score points.

39.      Defendants eliminate almost the entire element of skill by establishing a handicap (similar to a point spread) for a limited number of athletes it determines can be used for a particular waging event.

40.     In addition, to being unlawful *per se* by violating Mississippi civil and criminal gambling laws, by establishing a "spread" for each athlete and limiting the number of athlete's the bettor can use, bettors are engaging in a gambling scheme predominately based upon chance.  Furthermore, Mississippi State law expressly forbids participation in gambling such as that DraftKings provides including *"for money, or any valuable thing won, lost, or bet at any game or games, or on any horse-race, cock-fight, or at any other sport, amusement, or pastime, or on any wager whatever"* making any such contracts involved in these operation *"utterly void"* whether written or verbal.  Miss. Code Ann. § 87-1-1.

41.     Mississippi's criminal and civil law prohibit Defendants' sports betting scheme because it is a game on which money is won or lost depending on the outcome.

42.     According to a survey conducted by the Sports Business Journal, only 1.3% of players realized gains from their participating in online fantasy sports.

43.     Just like looking at a history of horses in prior horse races, the betting in DFS game is still illegal regardless of the skill used in picking horses or athletes. Another analogy is betting on the outcome of a billiards game. It is simply illegal. Whether one player is skilled and anther unskilled.

44.     In addition, although not a required element under Mississippi remedial statutes, defendants gambling scheme is a game of chance because an individual athlete's performance (especially in one game) will always be affected by material elements of chance that affect scoring and winning outcomes including variables such as player injury, fumbles, weather conditions, controversial officiating, suspension, or other off field circumstances. By any analysis, the Defendants operations are a continuous enterprise which is illegal under the laws of Mississippi.

45.     Bettors have no measure of control over all the variables that affect the performance of the college and professional athletes, rendering the Defendants scheme a game of chance.  Furthermore, the fantasy sports gambling is inherently more risky, than a simple card game in that the bettor has no control over the outcome once the wager is placed.  The gambler is 100% dependent upon the skills, talents and other unknown variables associated with the game itself and the players, themselves.

46.     Defendants represent that their gambling scheme is not illegal.

9

47.     The UIGEA did not legalize fantasy sports, it merely provides an exemption to banks from being held liable for processing transactions relating to certain fantasy sports.

48.     The UIGEA was enacted to regulate banks and other payment processors, not bookmakers.

49.     Under the UIGEA's definition, unlawful internet gambling means "to place, receive, or otherwise knowingly transmit a bet or wager by any means which involves the use, at least in part, of the Internet" that is illegal under federal, state, or tribal law. The actions of defendant are illegal under Mississippi law and are not protected by the Federal UIGEA.

50.     Mississippi law prohibits sports betting schemes, including DraftKing's scheme, and prohibits Defendants' from accepting payments from or entering into contracts with persons in Mississippi. In addition, Mississippi requires gambling operations to be licensed. The Defendant is not licensed to carry out gambling in Mississippi and cannot possible qualify for a license.

## CLASS ALLEGATIONS

51.     A class action is the proper form to bring Plaintiffs' claims under Federal R. Civ. Proc. 23. The potential class is so large that joinder of all members would be impracticable. Additionally, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interest of the classes.

52.     This action satisfies all of the requirements of Federal R. Civ. Proc. 23, including numerosity, commonality, typically, adequacy, predominance and superiority.

53.     <u>Numerosity:</u>  the Class is so numerous that joinder of all members is impracticable. While the exact number is not known at this time by Plaintiffs, it is generally ascertainable by appropriate discovery. DraftKings is a daily/weekly pay participation fantasy sports and the fantasy sports trade associations has stated that some 22% of 22 to 49 year old males playing online. Mathematically, the class in Mississippi will likely be thousands of players.

54.     <u>Commonality:</u>  the claims made by Plaintiffs  (including husband, wives and children of said gamblers) meet the commonality requirement because they present shared questions of law and fact, and resolving these questions will resolve the class wide litigation. These shared questions predominate over individual questions, and they include, without limitation:

  a.   Whether Plaintiffs and members of the class have entered into valid contracts with Defendants within the past five (5) years.

  b.   Whether such contracts are *per se* void, pursuant of Mississippi law;

  c.   Whether Plaintiffs and members of the Class paid monies to Defendants in consideration of those contracts;

  d.   Whether Defendants' operations are an game under all applicable laws and rules;

  e.   Whether Defendants' operations violate Mississippi criminal law;

  f.   Whether Defendants' operations violate Mississippi civil law;

g. Whether Plaintiffs and members of the Class are entitled to restitution and entitled to recovery of lose wagers from Defendants;

h. Whether Defendants converted Plaintiffs' funds;

i. Whether Defendants have been unjustly enriched;

j. Whether Plaintiffs have been damaged;

k. Whether Defendants are required to disgorge all monies received as a result of illegal gambling in violation of Mississippi law;

l. Whether consumers were harmed by Defendants' actions as described above; and

m. Whether the Terms of Use are unconscionable, illusory, fraudulent and/or otherwise void;

55. Typicality: Plaintiffs' claims are typical of those of the other Class members because Plaintiffs, like every other Class member, lost money in an illegal game and is entitled to recover losses together with punitive damages and attorney fees under Mississippi law.

56. The claims of the Class Representative Plaintiffs are furthermore typical of other Class members because they make the same claims as other class members; and Plaintiffs' claims and those of the proposed Class are based upon the same legal theories, and arise out of the same practices and course of conduct engaged in by Defendants on behalf of all Class members.

57. Further, the representative Plaintiffs' damages arise out of nearly identical and repetitive policies and practices engaged in by Defendants.

12

58.     Adequacy: Plaintiffs will fairly and adequately represent and protect the interests of the Class and he has no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiff's counsel have previously successfully prosecuted class action cases and have been class counsel caused in multiple cases.

59.     Superiority:  The Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individuals actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those Class members who could afford to litigate such a claim, it would still be economically impractical. The losses individually are typically under one thousand ($1,000.00) dollars and cannot effectively be handled individually.

60.     The nature of this action and the nature of Mississippi laws available to Plaintiffs and the Class makes the use of the class actions device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual suits could unreasonably consume the amounts that would be recovered;

13

proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged; and Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

61.     The proposed Class is described as follows:

> **"All persons, and/or the wife of, who participated in the Defendants' Daily Fantasy Sports (DFS) within the State of Mississippi, and had money credited to the DraftKing's account and lost said monies while competing in any game or contest operated by Defendant DraftKings."**

62.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class and to modify, amend, add or remove proposed subclasses, before the Court determines whether certification is appropriate and as the parties engage in discovery.

63.     Excluded from the Class are:

a.  Defendants and any entities in which defendants have a controlling interest;

b.  Any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendants;

c.  The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

d.  All person or entities that properly execute and timely file a request for exclusion for the Class;

e.  Any attorneys representing the Plaintiffs or the Class.

## COUNT I – VIOLATION OF MISSISSIPPI CODE

64.     Plaintiff realleges, readopted, and incorporates by reference each of the foregoing

facts and allegations as though full set forth herein.

65.     Mississippi Code δ 87-1-1 provides that:

*§ 87-1-1. Utterly void*

Contracts, judgments, securities, conveyances made, given, granted, or executed, where the whole or any part of the consideration or foundation thereof shall be for money, or any valuable thing won, lost, or bet at any game or games, or on any horse-race, cock-fight, or at any other sport, amusement, or pastime, or on any wager whatever, or for the reimbursing or repaying any money knowingly lent or advanced for the purpose of such gaming or gambling, or to be wagered on any game, play, horse-race, cock-fight, or on any sport, amusement, pastime, or wager, shall be utterly void.

Mississippi Code Ann. δ 87-1-5 provides that:

*§ 87-1-5. Loser may sue and recover money or property lost; exceptions*

If any person, by playing at any game whatever, or by betting on the sides or hands of such as do play at any game, or by betting on any horse race or cockfight, or at any other sport or pastime, or by any wager whatever, shall lose any money, property, or other valuable thing, real or personal, and shall pay or deliver the same or any part thereof, the person so losing and paying or delivering the same, or his wife or children, may sue for and recover such money, property, or other valuable thing so lost and paid or delivered, or any part thereof, from the person knowingly receiving the same, with costs.

66.     As to Plaintiffs, and those similarly situated, Defendants are indebted to the

Plaintiff for all the money lost.

67.     As a direct and proximate result of Defendants' violation of Mississippi Code δ

87-1-1, Plaintiffs and the proposed class were damaged and are entitled to recover all

monies lost as a result of Defendants' utterly void gaming contracts on behalf of

themselves and all others, similarly situated, as allowed under Mississippi laws.

15

68.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and the Class have suffered damages and continue to suffer damages in an amount greater than five million ($5,000,000.00) dollars and said amount to be determined more precisely at trial.

## COUNT II – UNJUST ENRICHMENT

69.     Plaintiff realleges, readopted, and incorporates by reference each of the foregoing facts and allegations as though full set forth herein.

70.     Defendants have improperly and wrongfully taken possession of, profited and/or encumbered money from Plaintiffs from an illegal gambling scheme, i.e. DFS

71.     By their actions in receiving payment and money from person participating in the illegal gambling scheme known as DFS a benefit is conferred upon Defendants that Defendants are not entitled to and Defendants are aware of such benefit; and such benefit was conferred, premised on fraud, misrepresentation and/or bad faith.

72.     By Defendants' improper and wrongful procuring of money under void gaming contracts, Defendants are financially unjustly enriched to the commensurate financial and economic detriment of Plaintiffs and the Class.

73.     Defendants accepted and retained the benefit conferred upon them, despite their knowledge that it is illegal to participate in illegal gambling in the State of Mississippi and accept monies under a void gaming contract.

74.     Retaining the non-gratuitous benefits conferred upon Defendants was unjust and inequitable. Therefore, Defendants are liable for the disgorgement and payment of restitution of the benefits it retained, with applicable interest.

75.     There is no enforceable agreement or contract that conflicts with Plaintiff' ability to recover under this cause of action.

76.     As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and the Class have suffered damages and continue to suffer damages and seek an amount greater than five million ($5,000,000.00) dollars and to be determined more precisely at trial.

## COUNT III – CONVERSION

77.     Plaintiff realleges, readopted, and incorporates by reference each of the foregoing facts and allegations as though full set forth herein.

78.     Defendants have and continue to improperly and wrongfully exercise dominion and control over Plaintiffs' and the Class members' personal property, namely fees and monies lost while participating in Defendants' DFS, that have been improperly and illegally taken and procured as a result of a void gaming contract, i.e. illegal gambling.

79.     Plaintiffs and the Class had, and continue to have an ownership interest in the fees and monies they paid to defendants as a result of the "utterly void" DFS gaming contract, i.e. illegal gaming on illegal games.

80.     Defendants have and continue to improperly and wrongfully exercise dominion and control over Plaintiffs' and the Class members' person property, i.e. money, for a significant and indefinite period of time, and Plaintiffs and the Class members are harmed by Defendants' conduct.

81.     As a direct and proximate result of Defendant's conversion, Plaintiffs and the Class members have suffered damages and continue to suffer damages in an amount

greater than five million ($5,000,000.00) dollars and to be determined more precisely at trial.

## COUNT IV- ILLEGAL GAMBLING PURSUANT TO MISSISSIPPI LAW CIVIL RICO

82.     Plaintiff realleges, readopted, and incorporates by reference each of the foregoing facts and allegations as though full set forth herein.

83.     Upon information and belief, The Defendant knowingly and willfully violates Miss. Code δ 97-43-5 and treble damages, punitive damages, attorney fees and all investigative, litigation and other costs are sought pursuant to Miss Code δ 97-4-9, Defendants engage in a pattern and practice of illegal activity

84. . In addition, the Defendants' actions constitute racketeering under Mississippi Code δ 97-43- et seq.

85.     Defendants engaged in an unlawful, illegal, and unlicensed gambling operation in such pattern and practice knowingly and with the purpose of depriving Plaintiffs of property such that Defendant knowingly obtained and/or exerted control over Plaintiffs' property.

86.     As a direct and proximate result of Defendants' illegal gambling in violation of the Mississippi Code 97-33-1 and/or 97-43-5 et seq. Plaintiffs and the Class members have suffered damages and continue to suffer damages in an amount greater than five million ($5,000,000.00) dollars and to be determined more precisely at trial.

## JOINT VENTURE, CIVIL CONSPIRACY AND/OR AGENT PRINCIPLE

87.     Based upon information and belief, are corporations, and individuals who illegally and/or unlawfully aided and abetted the Defendant DraftKings with their illegal and unlawful gambling game described herein.

88. At all relevant times all Defendants acted in concert in a joint venture and/or conspiracy and/or agent/principle relationship, and are equally involved and knowledgeable of all actions.

89. Upon investigation, information, and belief, Defendants have engaged in the unlawful and illegal gambling venture, games or contests in violation of Mississippi law to generate revenues for itself, partners, parent companies, associated companies, co-conspirators, and persons with whom they are engaged in a joint venture with. Defendants have engaged in a scheme wherein Defendants disgorged Mississippi citizens of monies while at times hiding the true identity of all of the parties involved and hiding the true nature of the illegal and unlawful gambling venture, game or contest.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and members of the proposed Class pray for relief and judgement against Defendants, as follow:

    a. For an order certifying the Class, appointing Plaintiff and their counsel to represent the Class and notice to the Class to be paid by Defendant;

    b. For damages suffered by Plaintiff and the proposed Class members in excess of five million ($5,000,000.00) dollars;

    c. For restitution to Plaintiffs and the proposed Class members of all monies wrongfully obtained by Defendants;

    d. For injunctive relief requiring Defendants to cease and desist from engaging in the unlawful, unfair, illegal, and/or deceptive practices alleged in the Complaint;

    e. An order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendants from

19

continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendants' past conduct;

f.   For Plaintiffs' reasonable attorney's fees, as permitted by law;

g.   For Plaintiffs' costs incurred;

h.   For pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and

i.   For judgment against all joint venturers, co-cospirators, and any agents/principles jointly and severally for all damages;

j.   For such other and further relief that this Court deems just and proper under equity or law, including the award of punitive damages;

k.   For a trial by jury.


                                    Respectfully Submitted,

                                    Julie Whitfield Herod, PLAINTIFF


                                    BY:/s/Charles Edwards_____
                                    Charles Edwards, Esq. (MSBN 99773)
                                    Marc L Boutwell, Esq. (MSBN 9263)
                                    The Law Office of Marc Boutwell, PLLC
                                    Post Office Box 956
                                    Lexington, Mississippi 39095
                                    Telephone: (662) 834-9029
                                    Facsimile:  (662) 834-3117

                                    Stephen L. Gowan, MSB # 8854
                                    GOWAN LAW OFFICE, PLLC
                                    Post Office Box 629
                                    Kosciusko, MS  39090-0629
                                    Office:  (662) 290-0042
                                    Fax:  (662) 289-3749